IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **KEVIN WEVODAU,** | : Civil No. 1:16-CV-0743 |
| **Plaintiff,** | : |
| v. | : |
| **COMMONWEALTH OF PENNSYLVANIA, OFFICE OF THE ATTORNEY GENERAL and KATHLEEN KANE, individually and in her official capacity,** | : |
| **Defendants.** | : Judge Sylvia H. Rambo |

# **M E M O R A N D U M**

In this employment action, Plaintiff alleges, *inter alia*, that Defendants violated the Pennsylvania Whistleblower Act and Family Medical Leave Act by placing him on involuntary paid administrative leave when he attempted to return to work after taking permitted medical leave. Presently before the court is Defendants' motion to dismiss Count II of the amended complaint, which alleges that Defendant Kathleen Kane illegally retaliated against Plaintiff in violation of the Family Medical Leave Act. For the reasons stated herein, the motion will be granted. In addition, because the only remaining claim in the amended complaint arises under Pennsylvania law, the court declines to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c)(3) and will remand this case to the Commonwealth Court of Pennsylvania.

**I.      Background**

    **A.      Facts**

Plaintiff has been employed by Defendant Commonwealth of Pennsylvania ("the Commonwealth") as a Special Agent in Charge of the Bureau of Criminal Investigations for the Office of the Attorney General of Pennsylvania since approximately January 2013. (Doc. 13, ¶¶ 9, 11.) During his employment with the Commonwealth, Defendant Kathleen Kane ("Defendant Kane," and, together with the Commonwealth, "Defendants") served as the Attorney General. (*Id*. at ¶ 9.) Prior to accepting his position with Defendant Kane's administration, Plaintiff worked for the Federal Bureau of Investigations ("FBI"). (*Id*. at ¶ 16.) Within a few months of working for Defendants, Plaintiff discovered that Defendant Kane was suspicious of him, and she accused him of being a "mole for the FBI" and of monitoring her activities, even though such was not true. (*Id*. at ¶¶ 15-17.)

In early 2014, Defendant Kane cancelled a planned sting operation that was based on an investigation into public corruption of certain Philadelphia government officials and state legislatures on the basis that the sting operation was racially motivated, despite evidence of wrongdoing, which Plaintiff alleges was done in order to maintain and gain political allies for Defendant Kane. (*Id*. at ¶¶ 18-21.) Plaintiff wrote a memo to Defendant Kane in April 2014, stating that her comments regarding the sting operation were untrue. (*Id*. at ¶ 25.) Despite

Defendant Kane's refusal to bring charges based on the evidence collected in the investigation leading up to the sting operation, the Philadelphia District Attorney reviewed the evidence and subsequently approved the prosecution of several individuals. (*Id.* at ¶ 26.) In November 2014, Plaintiff met with a Montgomery County Special Prosecutor regarding an investigation into Defendant Kane's administration related to potential criminal charges against Defendant Kane, and Plaintiff subsequently testified before a grand jury in December 2014 and January 2015. (*Id.* at ¶¶ 28-30, 32.)

On April 16, 2015, an undercover agent involved in the sting operation filed a defamation suit against both Defendant Kane and Plaintiff related to Defendant Kane's statements that the operation involved racial targeting, statements that Defendant Kane attributed to Plaintiff. (*Id.* at ¶ 34.) Plaintiff requested separate legal counsel for the suit, stating that his interests were not aligned with Defendant Kane's and that he intended to expose her false statements. (*Id.* at ¶ 35.) In May 2015, a newspaper article was published which stated that Plaintiff had reported the falsity of Defendant Kane's assertions about the sting operation, and Plaintiff alleges that Defendant Kane received discovery shortly thereafter that both identified Plaintiff as a witness in a criminal trial against her related to the sting operation and detailed his grand jury testimony. (*Id.* at ¶¶ 37-38.)

On June 19, 2015, Defendant Kane directed Plaintiff to visit her at her residence after business hours and instructed him to leave his phone on a table before they spoke. (*Id.* at ¶¶ 39-40.) Plaintiff alleges that Defendant Kane told him that he was a cancer to the Office of the Attorney General, was the leak for all negative press about the office, and threatened that his reputation could be ruined and his family lost if he did not resign from his position. (*Id.* at ¶¶ 41-42.) Plaintiff refused to resign, and again testified before a grand jury for the Philadelphia District Attorney's office related to the sting operation and Defendant Kane's efforts to threaten and intimidate potential witnesses. (*Id.* at ¶¶ 43-44.)

On June 22, 2015, Plaintiff applied for a twelve-week leave of absence under the Family Medical Leave Act ("FMLA") for personal health issues, which Defendants approved. (*Id.* at ¶¶ 45-46.) After the expiration of the FMLA leave period, on or about October 22, 2015, Plaintiff attempted to return to work, but was told by Defendants that he would first need a fitness for duty evaluation. (*Id.* at ¶ 48.) Plaintiff alleges that he agreed to the evaluation, but Defendants never responded to his inquiries regarding what exactly he needed to do to complete an evaluation, and that Defendants have since maintained that Plaintiff is on an administrative leave, but have given no reason for the administrative leave or a date upon which it will expire. (*Id.* at ¶¶ 48, 50.) As of the filing of the amended complaint, Plaintiff had been on administrative leave for approximately eight

months and counting, despite having been previously medically cleared to return to work. (*Id.* at ¶¶ 49, 55, 72.) Plaintiff alleges that the administrative leave and refusal to allow him to return to work is in retaliation for him exercising his right to FMLA leave and for testifying against Defendant Kane regarding the sting operation. (*Id.* at ¶¶ 56, 58, 60-61.)

### B. Procedural History

Plaintiff initiated this action by filing a complaint against Defendants in the Commonwealth Court of Pennsylvania on April 4, 2016. (Doc. 2.) Defendants removed the action to this court on May 3, 2016 (Doc. 1), and subsequently filed a motion to dismiss the complaint for failure to state a claim on June 9, 2016 (Doc. 11.) Plaintiff filed an amended complaint on June 23, 2016 (Doc. 13), and Defendants moved to dismiss Plaintiff's FMLA retaliation claim contained in Count II of the amended complaint on July 8, 2016 (Doc. 17.) The motion has been fully briefed (Docs. 18-20) and is ripe for disposition.

## II. Legal Standard

Defendants have moved to dismiss Count II of the amended complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] A motion to dismiss pursuant to Rule 12(b)(6) tests

---

[1] Defendants have also moved to strike Plaintiff's purported request for punitive damages under Federal Rule of Civil Procedure 12(f), arguing that punitive damages are not available under either the Pennsylvania Whistleblower Law or the FMLA. (*See* Doc. 18, p. 15 of 16.) However,

the sufficiency of the complaint against the pleading requirements of Rule 8(a), which requires that a complaint set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). For a complaint to survive dismissal it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. v. Twombly*, 550 U.S. 544, 570 (2007)). Thus, the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *United States v. Pennsylvania*, 110 F. Supp. 3d 544, 548 (M.D. Pa. 2015) (quoting *Fleisher v. Standard Ins. Co.*, 679 F.3d 116, 120 (3d Cir. 2012)); *see also* Fed. R. Civ. P. 12(b)(6).

### III. Discussion

Defendants argue that Plaintiff has failed to state an FMLA retaliation claim because: (1) paid administrative leave does not qualify as an adverse employment action; (2) Plaintiff waited five weeks after the expiration of his FMLA leave to seek reinstatement, and employees are subject to termination as of the first day after FMLA leave has expired should they not return to work; and (3) Plaintiff has

---

the amended complaint does not contain a request for punitive damages, and Plaintiff acknowledges both that they are unavailable and that he is not pursuing such an award. (*See* Doc. 19, p. 4 of 17.) Accordingly, the court finds that Defendants' request to strike Plaintiff's non-existent request for punitive damages is moot.

not pleaded facts to support that his placement on administrative leave was causally related to his FMLA leave. (*See* Doc. 18, pp. 7-9 of 16.) Plaintiff argues in response that he was given an extension of his FMLA leave by Defendants and attempted to return to work promptly at the expiration of the extension, that paid administrative leave is an adverse employment action, and that the timing of the administrative leave shows the causal link to his decision to take FMLA leave. (*See* Doc. 19, pp. 9-12 of 17.) The court will discuss each argument in turn; however, because the court finds Defendants' second argument dispositive, it need not reach the causation element.

### A. Adverse Employment Action

Defendants' first argument is that Plaintiff has failed to state a claim for retaliation under the FMLA because placing an employee on paid administrative leave is not an adverse employment action. To establish a retaliation claim under the FMLA, a "plaintiff must prove that (1) she invoked her right to FMLA-qualifying leave, (2) she suffered an adverse employment decision, and (3) the adverse action was causally related to her invocation of rights." *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 301-02 (3d Cir. 2012) (citing *Erdman v. Nationwide Ins. Co.*, 582 F.3d 500, 508-09 (3d Cir. 2009)). In reviewing retaliation claims, courts within the Third Circuit have held that "a plaintiff must show 'that a reasonable employee would have found the challenged actions

"materially adverse" in that they 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Burton v. Pa. State Police*, 990 F. Supp. 2d 478, 509 (M.D. Pa. 2014) (citing *Moore v. City of Phila.*, 461 F.3d 331, 341 (3d Cir. 2006) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)); *see also Grosso v. Fed. Express Corp.*, 467 F. Supp. 2d 449, 459 (E.D. Pa. 2006) ("Thus, this Court concludes that *Burlington Northern* provides guidance in determining whether plaintiff was subject to an "adverse employment action [under the FMLA]").

Here, Plaintiff alleges that he was placed on paid administrative leave, which has now persisted for over a year, and given neither a reason for the action nor its anticipated duration. Other courts have found that similar circumstances can constitute an adverse employment action:

> Plaintiff was placed on paid administrative leave on September 16, 2005. Although he continued to receive full compensation and other benefits, he was relieved of all job responsibilities, ceased to function in his employment position or any other capacity for Defendant, and was not permitted to come to the workplace. His interaction with fellow employees ceased, as did any on-the-job experience and training he normally would have received. Plaintiff did not receive regular employment reviews that might have laid the foundation for increased responsibilities or pay. As of the date of trial, Plaintiff had remained on paid administrative leave for almost one year, with no indication from Defendant as to when he might be permitted to return to work.

> The Court concludes that a reasonable employee likely would find such an administrative leave to be "materially adverse" as required by *Burlington*.

*Foraker v. Apollo Grp. Inc.*, Civ. No. 04-cv-2614, 2006 WL 3390306, *2 (D. Ariz. Nov. 22, 2006); *see also Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 332 (5th Cir. 2009) ("Placing an employee on paid administrative leave, however, cannot be said to be a 'petty slight.' Indeed, depending on the circumstances, it may range from a completely benign measure to one that stigmatizes an employee and causes significant emotional distress. Forced leave may even affect an employee's opportunities for future advancement.").[2] The court agrees with the analysis in *Foraker*, and finds that Plaintiff has sufficiently alleged that his ongoing paid administrative leave, which deprives him of the ability to go to his workplace and advance his career, constitutes an adverse employment action.

## B. Timing of Attempted Return to Work

Defendants next argue that Plaintiff has failed to state a claim for retaliation under the FMLA because he did not attempt to return to work until five weeks after his FMLA leave expired, and he therefore had no right to reinstatement. (*See* Doc. 18, pp. 7-8 of 16.) Plaintiff alleges that he was given express permission to extend his leave beyond the twelve weeks allotted by the FMLA, and he was entitled to

---

[2] Even abused, fictional office employee Milton Waddams was allowed to go to work – albeit in the basement and deprived of his favorite stapler – and no one disputes the adversity of his ultimately untenable work environment. *See* Office Space (Twentieth Century Fox Film Corporation 1999).

reinstatement when he attempted to return to work at the end of the extension. (*See* Doc. 19, pp. 11-12 of 17.)

The majority of courts that have reviewed extensions of FMLA leave beyond twelve weeks have interpreted the twelve-week leave period strictly and found that employees are not entitled to the protections of the FMLA after the statutory leave has expired, even where the employee has received permission to extend their leave from the employer. *See, e.g.*, *Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 364 F.3d 135, 148 (3d Cir. 2004) (holding that employee who exceeded FMLA leave "was subject to immediate discharge on the very first workday that he was both absent from work and no longer protected by the FMLA."); *Hofferica v. St. Mary Med. Ctr.*, 817 F. Supp. 2d 569, 577 (E.D. Pa. 2011) (stating that "[a]n employer may not terminate an employee because he or she has taken the leave permitted by the statute. If the employee is not able to return to work after twelve weeks, however, the employer may terminate the employee.") (quoting *Katekovich v. Team Rent A Car, Inc.*, 36 F. App'x 688, 690 (3d Cir. 2002)) (alteration in original); *Dogmanits v. Capital Blue Cross*, 413 F. Supp. 2d 452, 462 (E.D. Pa. 2005) (holding that employees who exceed the twelve weeks of FMLA leave "stand to lose their entitlement to job restoration even if their employers provide additional, non-FMLA, leave.").

In arguing that he was still protected by the FMLA due to his employer's express permission to extend his leave, Plaintiff cites a single decision from the District of New Jersey which held that an employee "should not lose her FMLA protection for taking a leave longer than 12 weeks when her employer gave her the permission to do so." *Santosuosso v. Novacare Rehab.*, 462 F. Supp. 2d 590, 597-98 (D.N.J. 2006). The holding in *Santosuosso* is clearly the minority position on this issue, and subsequent cases within the District of New Jersey have declined to follow its approach. *See Ackerman v. Beth Israel Cemetery Ass'n of Woodbridge, N.J.*, Civ. No. 09-cv-1097, 2010 WL 2651299, *8 n.3 (D.N.J. June 25, 2010) ("[T]his Court finds as a matter of law that when Plaintiff exceeded the twelve-week FMLA leave period, he lost the protections he had under the FMLA. Thus, plaintiff has failed to state a claim under the FMLA."); *see also Devine v. Prudential Ins. Co. of Am.*, Civ. No. 03-cv-3971, 2007 WL 1875530, *30 (D.N.J. June 28, 2007) (dismissing FMLA claim at summary judgment where employee exceeded twelve weeks of leave, and quoting a letter opinion from the United States Department of Labor that stated "[i]f the employee is unable to or does not return to work at the end of 12 weeks of FMLA leave (provided the employer designated the leave as FMLA leave and so notified the employee in writing), all entitlements and rights under FMLA *cease* at that time").

Here, Plaintiff acknowledges that he did not attempt to return to work until five weeks after his FMLA leave expired. Thus, the court finds that Plaintiff was no longer entitled to the protections of the FMLA as a matter of law. In so finding, the court adopts the majority approach and declines to follow the holding in *Santosuosso*.

### C. Supplemental Jurisdiction

After dismissal of Plaintiff's FMLA claim, the only remaining claim in the amended complaint is a retaliation claim pursuant to the Pennsylvania Whistleblower Law, over which the court does not have original jurisdiction. Thus, the court must decide if it is appropriate in this case to exercise supplemental jurisdiction over Plaintiff's state law claim.

Whether to exercise supplemental jurisdiction is within the discretion of the court. It is well settled that a district court "may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). When deciding whether to exercise supplemental jurisdiction, "a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity." *City of Chi. v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). The Third Circuit has held that "where the claim over which the district

court has original jurisdiction is dismissed before trial, the district court *must* decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000).

Here, the court finds that no considerations of judicial economy, convenience, or fairness provide an affirmative justification for exercising supplemental jurisdiction after the court has disposed of Plaintiff's federal claim. The case is at an early stage of litigation, no significant time or resources have been expended, and a Pennsylvania state court is the more appropriate forum to decide a single claim pursuant to Pennsylvania law.

## IV. Conclusion

For the reasons stated herein, the court finds that Plaintiff has failed to state claim upon which relief can be granted pursuant to the FMLA, and, accordingly, Count II of the amended complaint will be dismissed. The court also declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claim pursuant to 28 U.S.C. § 1367(c)(3), and will remand this case to the Commonwealth Court of Pennsylvania.

An appropriate order will issue.

                                                                s/Sylvia H. Rambo
                                                                SYLVIA H. RAMBO
                                                                United States District Judge

Dated: January 4, 2017